**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT CINCINNATI**

| | | |
|---|---|---|
| CHAD COPELAND, | : | Case No. 1:22-cv-209 |
| | : | Consolidated with Case No. 1:22-cv-218 |
| Petitioner, | : | and Case No. 1:22-cv-238 |
| | : | |
| vs. | : | Judge Matthew W. McFarland |
| | : | Magistrate Judge Elizabeth P. Deavers |
| TIM SHOOP, WARDEN | : | |
| | : | |
| Respondent. | : | |

## REPORT AND RECOMMENDATION

Chad Copeland, a state prisoner proceeding through counsel, seeks a writ of habeas corpus under 28 U.S.C. § 2254 in each of these three consolidated cases.[1] His Petitions, styled as Motion[s] for Leave to File Petition for Writ of Habeas Corpus, are currently before the undersigned Magistrate Judge for a preliminary review pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Court ("Rule 4"). Petitioner's motion for release on bond filed in the First Case (Doc. 2) is also pending.

For the reasons that follow, the Undersigned **RECOMMENDS** that all three Petitions be **DISMISSED WITH PREJUDICE,** and that the motions to file or proceed herein be **DENIED**. The Undersigned further **RECOMMENDS** that Petitioner's motion for bond be **DENIED.**

## I.     PRELIMNARY REVIEW OF THE PETITIONS

Pursuant to Rule 4, this Court must conduct a preliminary review of the Petitions to determine whether "it plainly appears from the petition and any attached exhibits that the

---

[1] Petitioner filed his First Petition on April 18, 2022, instituting Case No. 1:22-cv-209. He filed his Second Petition on April 25, 2022, instituting Case No. 1:22-cv-218. He filed his Third Petition on May 2, 2022, instituting Case No. 1:22-cv-238. The Undersigned will refer to these matters as Petitioner's First Petition or First Case, Second Petition or Second Case, and Third Petition or Third Case.

petitioner is not entitled to relief in the district court." If it does so appear, the petition must be

dismissed. *Id.* Rule 4 allows for the dismissal of petitions that raise legally frivolous claims, as

well as petitions that contain "factual allegations that are palpably incredible or false." *Carson v.

Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). Here, it plainly appears from the face of the

Petitions that Petitioner is not entitled to relief, as these actions are barred by the one-year statute

of limitations set forth in 28 U.S.C. § 2244(d).

### A.      Factual Background and Procedural History

Ohio's Twelfth District Court of Appeals summarized the procedural history of the

criminal case against Petitioner as follows:

> Appellant was convicted of 21 criminal counts[2] for his involvement in a check-kiting scheme and a theft from an investment scheme. Appellant was sentenced to 23 years in prison and ordered to pay $216,500 in fines and $868,381.68 in restitution. Appellant appealed his conviction and sentence to this court in *State v. Copeland,* Butler App. No. CA2003-12-320, 2005-Ohio-5899 *("Copeland I").* In that case, this court affirmed appellant's convictions, but reversed and remanded the case to the trial court, ordering that a count of aggravated theft and a count of grand theft be merged because they were allied offenses of similar import. Thereafter, the Ohio Supreme Court accepted appellant's discretionary appeal and reversed the judgment of this court for resentencing based on *State v. Foster,* 109 Ohio St.3d 1, 2006-Ohio-856. See *In re Ohio Criminal Sentencing Statutes Cases,* 110 Ohio St.3d 264, 2006-Ohio-4475. On remand, the trial court sentenced appellant once again to a total of 23 years in prison and ordered him to pay $216,500 in fines and $868,381.68 in restitution.

*State v. Copeland*, 12th Dist. Butler No. CA2007-02-039, 2007-Ohio-6168, ¶ 2 (Nov. 19, 2007).

Petitioner again appealed, and the Court of Appeals affirmed. *Id*. at ¶ 29.

Petitioner sought further review from the Supreme Court of Ohio, but that court declined

to exercise jurisdiction over his appeal. *See State v. Copeland*, 117 Ohio St. 3d 1460, 2008-

---

[2] "Appellant was convicted of two counts of aggravated theft by deception, one count of grand theft by deception, one count of money laundering, nine counts of misrepresentation in the sale of securities, and eight counts of passing bad checks. *Copeland I* at ¶ 11." *State v. Copeland*, 12th Dist. Butler No. CA2007-02-039, 2007-Ohio-6168, ¶ 2 n.1 (Nov. 19, 2007).

Ohio-1635, 884 N.E.2d 68 (Apr. 9, 2008) (table), *recons. denied*, 118 Ohio St. 3d 1436, 2008-Ohio-2595, 887 N.E.2d 1204 (June 4, 2008) (table).  He then petitioned the Supreme Court of the United States for a writ of certiorari.  On October 14, 2008, the Supreme Court declined to review his case.  *See Copeland v. Ohio*, 555 U.S. 946 (2008).

In 2021, more than twelve years after the Supreme Court denied certiorari, Petitioner sought state habeas corpus relief in the Ross County, Ohio, Court of Common Pleas.  (*See* First Petition, PageID 8.)  On May 5 or 6, 2021, his state petition was dismissed.  (*Id*.)  *See Copeland v. Ross County Pros.*, Ross C.P. No. 21CI000060 (May 6, 2021), available by name or case number search at https://eaccess.co.ross.oh.us/eservices/home.page.2 (accessed Aug. 3, 2022).[3]

The instant actions were filed almost a year after that dismissal, and after Petitioner has served nearly twenty years of his twenty-three-year sentence.  (Doc. 1, PageID 22, First Case.) Petitioner filed his First Petition with the Court on April 18, 2022, his Second Petition on April 25, 2022, and his Third Petition on May 2, 2022.  For reasons that are unclear, the Petitions were filed by three different attorneys, two of whom work for the same law firm.

The First Petition challenges the length of Petitioner's sentence.[4]  (First Petition, PageID 10.)  The Second Petition challenges the sufficiency of the evidence supporting his convictions.[5] (Second Petition, PageID 9, 11.)  The Third Petition challenges joinder of certain counts and the

---

[3] This Court may take judicial notice of court records that are available online to members of the public. *See Lynch v. Leis*, 382 F.3d 642, 648 n.5 (6th Cir. 2004) (citing *Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999)).

[4] He asserts:  "A prison sentence for a first-time felon of more than the minimum sentence, consecutive sentence, and a total of 23 years in prior, is an abuse of discretion and contrary to the law."  (First Petition, PageID 10.)

[5] He asserts:  "Insufficient evidence for convictions of theft by deception, money laundering, misrepresentation in the sale of securities and prohitions [*sic*] in the sale of securities" and "Insufficient evidence for passing bad checks and omnibus offense of theft by deception."  (Second Petition, PageID 9, 11.)

3

venue for the criminal case.[6]  (Third Petition, PageID 9, 11.)  This Court consolidated the three

Petitions on June 29, 2022, because they all challenge the same judgment.[7]  (Consolidation

Order, Doc. 8, First Case.)  This preliminary review follows.

### B.    Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which became

effective on April 24, 1996, imposes a one-year statute of limitations on the filing of habeas

corpus petitions in federal court.  28 U.S.C. § 2244(d).  "Generally, the one-year statute of

limitations for habeas petitions filed by state prisoners begins to run on 'the date on which the

judgment became final by the conclusion of direct review or the expiration of the time for

seeking such review.'"  *Hill v. Bauman*, No. 20-1091, 2020 WL 4346669, at *2 (6th Cir. May

21, 2020), *cert. denied*, 141 S. Ct. 922 (2020) (quoting 28 U.S.C. § 2244(d)(1)(A)).

Here, Petitioner's conviction and sentence "became final by the conclusion of direct

review," on October 14, 2008, when the Supreme Court of the United States denied his petition

for a writ of certiorari.  28 U.S.C. § 2244(d)(1)(A); *see Copeland v. Ohio*, 555 U.S. 946 (Oct. 14,

2008).  Petitioner had one year thereafter, or until October 14, 2009, to file a timely federal

habeas corpus petition under 28 U.S.C. § 2254.  *See Holland v. Florida*, 560 U.S. 631, 635

(2010) ("the 1-year AEDPA limitations clock began to run" the date that the Supreme Court of

---

[6] He asserts:  "The Indictment and subsequent trial joined tow [*sic*] separate and unrelated cases, occurring in two different venues to the prejudice of the Petitioner's [*sic*] rights of Due Process and Fair and Impartial Jury" and "Venue is improper in Butler County for Counts 15 through 23 of the Indictment, as no essential elements of the offenses occurred within the county of trial."  (Third Petition, PageID 9, 11.)

[7] Petitioner was originally sentenced on November 20, 2003.  (*See* December 9, 2003 Judgment of Conviction Entry, attached to the First Petition at PageID 48-54 and to the Second Petition at PageID 43-49.)  He was re-sentenced on remand on January 18, 2007.  (*See* January 24, 2007 Ammended [*sic*] Judgment of Conviction Entry, attached to First Petition at PageID 42-47 and to the Second Petition at PageID 50-55.)  *See also* the online docket of Butler County, Ohio Case No. CR 2002 10 1658, available by name or case number search at https://pa.butlercountyclerk. org/eservices/home.page.6 (accessed August 3, 2022).

the United States denied the petition for certiorari).  His Petitions, filed in 2022, more than

twelve years later, are therefore untimely under § 2244(d)(1)(A).

The statute contains some alternative starting dates for the statute of limitations, but they

do not apply here.  There is no indication, for example, that an "impediment to filing an

application created by State action in violation of the Constitution or laws of the United States

[was] removed," § 2244(d)(1)(B); that an applicable "constitutional right . . . was . . . newly

recognized by the Supreme Court and made retroactive[]," § 2244(d)(1)(C); or that the "factual

predicate of the claim or claims presented" was discovered later, § 2244(d)(1)(D).

Instead, Petitioner acknowledges in each Petition that his filing is late, asserting that he

"is seeking to file outside the statute of limitations."  (First Petition, PageID 18; Second Petition,

PageID 17; Third Petition, PageID 17).  To this end, Petitioner styled his initial filing in each

case as a Motion for Leave to File Petition for Writ of Habeas Corpus.  Because of the posture of

the cases, Respondent has not filed responses to the motions/petitions.  *See* Rule 5(a) of the

Rules Governing Section 2254 Cases in the United States District Court ("The respondent is not

required to answer the petition unless a judge so orders.").

Failure to file a habeas corpus petition within the statute of limitations subjects the

petition to dismissal.  *See, e.g., Washington v. Buchanan*, No. 2:12-cv-103, 2012 WL 6029249,

at *1 (S.D. Ohio Dec. 4, 2012) (granting motion to dismiss habeas corpus petition filed outside

the statute of limitations); *Davis v. Bradshaw*, 900 F.3d 315, 325 (6th Cir. 2018) (a time-barred

claim "[g]enerally . . . would prevent a district court from considering the merits" of a habeas

petition).  There are some factors that may change this conclusion, however:

> The statute provides for tolling of the limitations period during the time in which
> "a properly filed application for State post-conviction or other collateral review
> with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2).
> And, under certain circumstances, the AEDPA limitations period may be equitably

tolled. *Holland v. Florida*, 560 U.S. 631, 645 (2010). "[A] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). A credible showing of actual innocence may also allow a habeas petitioner to overcome AEDPA's limitations period. *McQuiggin v. Perkins*, 569 U.S. 383, 387 (2013).

*Hill*, 2020 WL 4346669, at *2. As discussed next, none of these factors apply here.

### 1.     Tolling by State Post-Conviction or Other Collateral Review

Section 2244(d)(2) provides that the statute of limitations is tolled during "[t]he time during which a properly filed application for State postconviction or other collateral review with respect to the pertinent judgment or claim is pending." Petitioner reports that he filed one such petition challenging the judgment on which he is confined: a 2021 state habeas corpus petition filed in Ross County.[8] (First Petition, PageID 8-9; Second Petition, PageID 7-8; Third Petition, PageID 7-8.) He notes that he "was awaiting the outcome of the Ross County Court of Common Pleas case before seeking intervention of this Court." (First Petition, PageID 18; Second Petition, PageID 17; Third Petition, PageID 17.) The online docket of Petitioner's criminal case in Butler County confirms that no post-conviction petitions were filed therein after his 2007 resentencing.[9]

The 2021 state habeas corpus petition does not toll the statute of limitations in this case because the statute had already expired in 2009, several years before the state petition was filed. *See Brooks v. McKee*, 307 F. Supp. 2d 902, 905 (E.D. Mich. 2004) (citing *Hargrove v. Brigano*, 300 F.3d 717, 718 n. 1 (6th Cir. 2002) and other cases) ("A state court post-conviction motion

---

[8] *See generally Dickens v. Chapman*, No. 18-1752, 2019 WL 3010578, at *2 (6th Cir. May 29, 2019) (assuming without deciding that a state habeas corpus petition could qualify as an "application for post-conviction or other collateral review" under § 2244(d)(2)); *Lawrence v. Florida*, 549 U.S. 327, 342 (2007) (Ginsburg, J., dissenting) ("an application for state habeas review undoubtedly is 'an application for State post-conviction review.'").

[9] *See* footnote 7 herein.

6

that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled."). Moreover, "[t]he tolling provision does not . . . 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run. *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003). "Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations." *Id*. (citing *Rashid v. Khulmann*, 991 F. Supp. 254, 259 (S.D.N.Y. 1998)). Section 2244(d)(2) therefore does not apply to toll the statute of limitations.

### 2. Equitable Tolling

The one-year statute of limitations in 28 U.S.C. § 2244 is subject to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 645 (2010). "Equitable tolling allows courts to review time-barred habeas petitions 'provided that a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.'" *Keeling v. Warden*, 673 F.3d 452, 462 (6th Cir. 2012) (quoting *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)). The doctrine "is used sparingly by federal courts." *Robertson*, 624 F.3d at 784 (citing *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560 (6th Cir. 2000)).

A petitioner is "'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Menominee Indian Tribe of Wisconsin v. United States*, 577 U.S. 250, 255 (2016). "[T]he second prong of the equitable tolling test is met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond [his] control." *Id*. at 257 (citing *Holland*) (emphasis in original).

"'The petitioner bears the burden of demonstrating that he [or she] is entitled to equitable tolling.'" *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004) (quoting *McClendon v. Sherman*,

7

329 F.3d 490, 494 (6th Cir. 2003)).  In this respect, the United States Court of Appeals for the

Sixth Circuit has held that a petitioner's pro se status, limited law-library access, or lack of

access to the transcript, do not warrant equitable tolling.  *Hall v. Warden, Lebanon Corr. Inst.*,

662 F.3d 745, 751 (6th Cir. 2011).  Likewise, ignorance of the law, illiteracy, and lack of legal

assistance do not amount to grounds for equitable tolling.  *Allen,* 366 F.3d at 403 ("[I]gnorance

of the law alone is not sufficient to warrant equitable tolling."); *Cobas v. Burgess,* 306 F.3d 441,

444 (6th Cir. 2002) ("an inmate's lack of legal training, his poor education, or even his illiteracy

does not give a court reason to toll the statute of limitations") (internal citations omitted).  And,

"[t]he Supreme Court has long held that 'the principles of equitable tolling . . . do not extend to

what is at best a garden variety claim of excusable neglect' that causes an attorney to miss a

deadline." *Robertson,* 624 F.3d at 784 (quoting *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89,

96 (1990)).

  Here, Petitioner does not argue that the statute of limitations should be equitably tolled.

He does not mention the statute of limitations except to acknowledge that he "is seeking to file

outside" of it.  (First Petition, PageID 18; Second Petition, PageID 17; Third Petition, PageID

17).  He has not raised any general argument in his Petitions—filed by counsel—that equitable

tolling is appropriate given the lengthy delay here, or that he satisfies either of the elements

established by the Supreme Court for its application.  However, documents submitted with the

First Petition reflect Petitioner's comment that, as of the date of his resentencing, he had

"worked in the law library" at his correctional institution for some time, and "so [had] done a lot

of research on this case and a lot of research on other cases helping people file Hab[ea]s Corpus

and things like that."  (First Petition, PageID 61, 58).  In the absence of any allegation or

showing in the Petitions of exceptional circumstances or Petitioner's diligence in pursuing his

rights, the Undersigned concludes that the doctrine of equitable tolling should not apply to excuse the twelve-year delay in filing. *See Graham-Humphreys*, 209 F.3d at 561 ("Absent compelling equitable considerations, a court should not extend limitations by even a single day.").

### 3. <u>Actual Innocence</u>

The Supreme Court of the United States has recognized that "a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief," such as an expired statute of limitations. *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). The doctrine, sometimes referred to as the miscarriage-of-justice exception, applies only "to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *Id*. at 395 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).

> A petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. In assessing a request for application of the actual-innocence exception, "a court must survey 'all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial.'" *Eberle* [v. Warden, Mansfield Corr. *Inst*., 532 F. App'x 605, 612-13 (6th Cir. 2013)] (quoting *Home v. Bell*, 547 U.S. 518, 538 (2006)). . . . Moreover, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

*Hill v. Mitchell*, No. 1:98-cv-452, 2019 WL 1785485, at *8 (S.D. Ohio Apr. 24, 2019). The Supreme Court has emphasized that, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence *not presented at trial*." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup,* 513 U.S. at 324) (emphasis added). "Given the rarity of such evidence, 'in virtually every case, the allegation of actual innocence has been summarily rejected.'" *Id*.

Petitioner does not specifically argue in his Petitions that he is actually innocent.  He likewise does not point to any newly discovered evidence showing that no reasonable jury would have convicted him; he instead discusses the evidence presented at trial, on which a jury did convict him.  Thus, this exception does not apply.  *See McQuiggin,* 569 U.S. at 394 ("AEDPA's time limitations apply to the typical case in which no allegation of actual innocence is made."). Some comments about the allegations in each Petition, however, are necessary.

### a. First Petition

Petitioner attaches as an exhibit to his First Petition an apparent (but modified in places[10]) copy of the transcript of his 2007 resentencing hearing, at which he claimed to be innocent.  (First Petition, PageID 71, 82.)   Specifically, he said, speaking on his own behalf in allocution:

> And nothing that happened in this courtroom was based in truth. A lot of evidence, even the State's own evidence proves that I am innocent if someone would just pick it up and read it because it completely contradicts everything that they said about it, which is why they kept focusing this court's attention instead of on the exhibits themselves . . . .

(First Petition, PageID 71.)  Ohio's Twelfth District Court of Appeals discussed his statements as follows on his second direct appeal:

> Appellant began his allocution by stating that he has worked in the prison law library since his original conviction and conducted "a lot of research." Appellant then addressed the trial judge, inquiring "are you a man of your word." The trial judge responded, "I am willing to listen to your mitigation. I am not going to be cross-examined." Appellant continued to address the trial judge about this question, but the judge redirected appellant to confine his remarks to mitigation. The trial judge instructed appellant, "You can say whatever you want. I am not going to play whatever game that you attempted to orchestrate here * * * so if you want to offer some mitigation, Mr. Copeland, I suggest you proceed."

> Thereafter, appellant ended his inquiry with the trial judge and continued with his allocution. Appellant discussed his view of this court's holding in *Copeland I*, and claimed that the cases against him were improperly joined for trial. Appellant argued that he was wrongly convicted of the check-kiting scheme.

---

[10] (*See, e.g.*, First Petition, PageID 70-73.)

Appellant then discussed his interactions with the investors that led to his theft and securities-related convictions, arguing that he did nothing fraudulent. Thereafter, appellant stated that he had "67 people on my witness list that could have testified" and that he did not testify at trial. Appellant criticized the prosecutor and stated, "The main thing though, that I wanted to see happen today is I want the justice of this case to be based on the truth. And nothing that happened in this courtroom was based in truth." Appellant then began discussing the stock market and how the investments he made have gone up in value since his incarceration. Further, appellant began discussing his civil suit to recover his investment funds.

At that point, the trial judge asked appellant if he would be "available" to pay restitution and appellant responded that he has always intended to repay a promissory note that he had given to the victims. Finally, the trial judge stated, "I understand the mitigation that you are going to offer this Court is that you were-the Court lost its way and made an improper ruling that allowed the cases to be tried simultaneously. In other words, it didn't sever the cases. And that you were not guilty to these offenses and the jury lost its way by finding you guilty."

Appellant responded, "Yes."

*State v. Copeland*, 12th Dist. Butler No. CA2007-02-039, 2007-Ohio-6168, ¶ 15-17 (Nov. 19, 2007). As discussed below, some of these claims are repeated in the Petitions.

First, however, the Undersigned concludes that the single comment in an attachment to the First Petition is not a credible claim of actual innocence based on newly-discovered evidence. The comment was made in 2007, by Petitioner, and cannot be considered newly discovered, such as would be required to apply this doctrine. (First Petition, PageID 71.) *See McQuiggin*, 569 U.S. at 399 (quoting *Schlup*, 513 U.S. at 327) ("To invoke the miscarriage of justice exception to AEDPA's statute of limitations, we repeat, a petitioner 'must show that it is more likely than not that no reasonable juror would have convicted him *in the light of the new evidence.*'") (emphasis added); *Dickens v. Chapman*, No. 18-1752, 2019 WL 3010578, at *1 (6th Cir. May 29, 2019) (quoting *Davis v. Bradshaw*, 900 F.3d 315, 326 (6th Cir. 2018) ("A petitioner claiming his actual innocence 'must support his allegations of constitutional error with new, reliable evidence, such

as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence, that was not presented at trial.'").

Instead of pointing to newly discovered evidence, Petitioner's arguments in the First Petition concern the propriety of his sentence. He argues:

> A prison sentence for a first-time felony of more than the minimum sentence, consecutive sentences, and a total of 23 years in prison, for one securities transaction and passing bad checks, is an abuse of discretion and is contrary to law. In doing so, the Court violated the fundamental principles of liberty and justice and subjected the Defendant to Cruel and Unusual Punishment.

(First Petition, PageID 28.) And: "According to constitutional law as it existed at the time of his offenses, the only lawful sentence that could have been rendered against Petitioner prior to the *Foster* remedy was a minimum term on each court." (First Petition, PageID 31.) And: "The Trial Court erred in trying and convicting the Petitioner of multiple thefts resulting from the same course of conduct." (PageID PageID 33.) He does allege that "neither bank involved in this case actually suffered any financial loss, pursued any criminal charges, filed civil litigation or even asked for restitution. Yet, the Court ordered over Seven Hundred Thousand Dollars in restitution, anyway." (First Petition, PageID 35.) The Undersigned concludes that this statement, which is not accompanied by a record citation or other evidence, also is not the equivalent to a credible claim of actual innocence based on new evidence that would avoid the expired statute of limitations.

### b. Second Petition

The Second Petition concerns the sufficiency of the evidence supporting Petitioner's convictions. (Second Petition, PageID 9, 11.) Petitioner argues, among other things:

> None of the convictions in this case (counts 1 - 14) meet the legal definition required by statute to arrest, indict, try, convict, or imprison the Petitioner. Several of the alleged crimes listed in the Indictment and the State's evidence relating to

12

them were so ludicrous they do not even qualify as criminal behavior and/or an indictable offense in the United States of America.

(Second Petition, PageID 27.)  He cites his own statement in allocution, discussed above, in support of this assertion.  (*Id*.)  He also argues:  "This Court will also notice that all the charges in this case are duplicative, repetitive, and cumulative to each other, and therefore, allied offenses."  (Second Petition, PageID 28.)  Most of the Second Petition contains Petitioner's view of the evidence presented against him at trial.  (Second Petition, PageID 29-37.)  *Compare State v. Copeland,* 12th Dist. Butler No. CA2003-12-320, 2005-Ohio-5899, ¶ 21-69 (rejecting Petitioner's arguments about the import and sufficiency of the evidence ).[11]  Petitioner asks "this Court to overturn his conviction based upon the legally insufficient evidence presented at trial."  (Second Petition, PageID 22, 3).  But, as noted above, "'actual innocence' means factual innocence, not mere legal insufficiency."  *Bousley*, 523 U.S. at 623; *see also Lee v. Brunsman,* 474 F. App'x 439, 442 (6th Cir. 2012) (citing *Calderon*, 523 U.S. at 559) ("a claim of legal innocence is insufficient to raise a miscarriage-of-justice claim.").  In addition, Petitioner does not present any newly-discovered evidence such as would support a claim (or a finding) of actual innocence in this context.

### c.  Third Petition

The Third Petition challenges joinder and venue in the criminal case.  Petitioner argues:  "The Indictment and subsequent trial joined tow [*sic*] separate and unrelated cases, occurring in

---

[11] As noted above, the Supreme Court of Ohio reversed this judgment and remanded the case to the trial court for resentencing, which resulted in the 2007 resentencing hearing.  *See In re Ohio Crim. Sentencing Statutes Cases*, 110 Ohio St. 3d 264, 2006-Ohio-4475, 853 N.E.2d 274.  (*See* Transcript, First Petition, PageID 50-93.)  The reversal was based on a new Ohio Supreme Court decision in *State v. Foster*, 109 Ohio St. 3d 1, 2006-Ohio-856, 845 N.E.2d 470, which was itself later abrogated by *Oregon v. Ice*, 555 U.S. 160 (2009).  The reversal did not disturb the Court of Appeals' factual findings concerning the sufficiency of the evidence supporting Petitioner's convictions, although it did lead to resentencing.  *See State v. Copeland*, 12th Dist. Butler No. CA2007-02-039, 2007-Ohio-6168 (Nov. 19, 2007).

two different venues to the prejudice of the Petitoner's [*sic*] rights of Due Process and Fair and Impartial Jury" and "Venue is improper in Butler County for Counts 15 through 23 of the Indictment, as no essential elements of the offenses occurred within the county of trial." (Third Petition, PageID 9, 11.)

Petitioner challenged joinder and venue in 2005 in his first direct appeal. *See State v. Copeland*, 12th Dist. Butler No. CA2003-12-320, 2005-Ohio-5899, ¶ 13-20 (concluding that there was "sufficient evidence to prove that Butler County was the proper venue for appellant's trial.") and ¶ 71-78 (finding that "the trial court did not abuse its discretion in denying appellant's motion to sever, as appellant has failed to demonstrate prejudice by the joinder of the check and securities counts."). Petitioner presents no new evidence with respect to those issues, but appears to challenge the state court's determinations, made nearly seventeen years ago, in his Third Petition. (*See* Third Petition, PageID 29, 31.) Under these circumstances, Petitioner has not stated a credible claim of actual innocence to avoid the statute of limitations.

### C. Conclusion on the Statute of Limitations

The statute of limitations for Petitioner to file a federal habeas corpus petition expired in October 2009, one year after the criminal judgment against him "became final by the conclusion of direct review." 28 U.S.C. § 2244(d)(1)(A). No alternative starting date for the statute of limitations in § 2244(d)(1) applies here. Likewise, neither the statutory tolling provision set forth in § 2244(d)(2) nor the equitable tolling doctrine apply. Finally, Petitioner had not made a credible claim of actual innocence to avoid the statute of limitations. The Petitions, filed more than twelve years late, are time-barred and should be dismissed.

## II. MOTIONS FOR LEAVE TO FILE OR PROCEED

As noted above, Petitioner styled his initial filings with this Court as Motion[s] for Leave to File Petition for Writ of Habeas Corpus. (First Petition, PageID 1; Second Petition, PageID 1;

Third Petition, PageID 1.)  The Rules Governing Section 2254 Cases in the United States District Court do not require a petitioner to seek or obtain leave to file a petition under § 2254.  To this extent, the motions should be denied as unnecessary.

To the extent that Petitioner intended these motions to be a general request to this Court to allow his cases to proceed and to examine his convictions and sentences without considering their obvious untimeliness, he has not pointed to any authority allowing this Court to do so as a general proposition.  And, as discussed above, Petitioner has not addressed the pertinent exceptions or doctrines this Court may consider to reach the merits of an untimely petition for habeas corpus.  Moreover, Petitioner has not presented any extraordinary or compelling reasons to allow him to proceed after delaying for so long.  The motions, to this extent, should be denied.

## III.  **MOTION FOR BOND**

Petitioner's motion for bond asks this Court to release Petitioner on an "OR Bond" during the pendency of that case.  (Doc. 2, First Case.)  In the motion, Petitioner argues that "intentional and outrageous violations of [his] Due Process Rights committed by the Ohio Court's [*sic*] and Prosecutor" lead to his lengthy sentence.  (Doc. 2, PageID 95, First Case.)  He suggests that the state trial court itself thought his sentence was too severe.[12]  (*Id.*)  Petitioner also submits that he has been a model inmate for nearly twenty years.  (*Id.*)

---

[12] During resentencing, the trial court held as follows:

> The court will find the defendant, having considered the purposes and principles of sentencing, having weighed the recidivism and the seriousness factors, is not amenable to available community control sanctions. While the court, according to Foster, is not restrained by the limitations placed upon it at the time of the original sentencing, the court will not increase the penalties, which I agree, the penalties imposed upon the defendant are on the side of severe. But I believe that they were consistent with the severity and the seriousness of the defendant's conduct, and they are consistent and appropriate given the complete lack of remorse displayed by the defendant in this case.

(Resentencing Transcript, First Petition, PageID 81-82.)

There is "a presumption against release that [the state] enjoys while the district court considers [a petitioner's habeas corpus] petition." *Pouncy v. Palmer*, 993 F.3d 461, 464 (6th Cir. 2021) (citing *Dotson v. Clark*, 900 F.2d 77, 79 (6th Cir. 1990)). "A prisoner seeking bail pending review of his habeas petition must, among other requirements, convince the district court that exceptional circumstances and the 'interests of justice' warrant relief." *Pouncy*, 993 F.3d at 463 (quoting *Dotson,* 900 F.2d at 79). "It will be the rare occasion when an inmate will be able to satisfy this standard." *Id*.

Because the First Petition (and the other two Petitions) are time-barred and should be dismissed without further development, the motion for bond pending that development should likewise be denied. The Undersigned further concludes that Petitioner has failed to show that exceptional circumstances and the interests of justice warrant relief in the form of release on bond.

## IV.    **CERTIFICATE OF APPEALABILITY**

A state prisoner seeking federal habeas corpus relief is not automatically entitled to appeal a district court's decision denying relief unless the district court issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c). A district court must issue or deny a COA "when it enters a final order adverse to the applicant." Rule 11 of the Rules Governing Section 2254 Cases.

To be entitled to a COA, a petitioner must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). The Sixth Circuit has also cautioned that "a court should not

16

grant a certificate without some substantial reason to think that the denial of relief might be incorrect." *Moody v. United States*, 958 F.3d 485, 488 (6th Cir. 2020).

"When a district court denies a claim on procedural grounds, the court may issue a COA only if the applicant shows 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Hill v. Bauman*, No. 20-1091, 2020 WL 4346669, at *1 (6th Cir. May 21, 2020) (quoting *Slack*, 529 U.S. at 484).

Here, reasonable jurists would not find it debatable that the Petitions are time-barred under 28 U.S.C. § 2244(d)(1)(A), given that Petitioner has admitted that he is seeking to file outside the statute of limitations, but has failed to address any reasons that might excuse the delay and allow the Court to consider the Petitions. A certificate of appealability, therefore, should be denied.

## V.     RECOMMENDED DISPOSITION

The Undersigned **RECOMMENDS** that this Court **DISMISS WITH PREJUDICE** the First Petition, the Second Petition, and the Third Petition as time-barred under 28 U.S.C. § 2241(d)(1). The Undersigned further **RECOMMENDS** that the Court **DENY** Petitioner's motions to file or proceed in each case, and his motion for bond in the First Case. Finally, the Undersigned **RECOMMENDS** that the Court **DENY** Petitioner a certificate of appealability.

## VI.    NOTICE REGARDING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

If any party objects to this Report and Recommendation ("R&R"), the party may serve and file specific, written objections to it within **FOURTEEN (14) DAYS** after being served with a copy thereof. Fed. R. Civ. P. 72(b); Rule 12 of the Section 2254 Rules. All objections shall specify the portion(s) of the R&R objected to and shall be accompanied by a memorandum of

17

law in support of the objections.  The Court may extend the 14-day objections period if a timely

motion for an extension of time is filed.

A Judge of this Court will make a de novo determination of those portions of the R&R to

which objection is made.  Upon proper objection, a Judge of this Court may accept, reject, or

modify, in whole or in part, the findings or recommendations made herein, may receive further

evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. §

636(b)(1).

The parties are specifically advised that failure to object to the R&R will result in a

waiver of the right to have the District Judge review the R&R de novo, and will also operate as a

waiver of the right to appeal the decision of the District Court adopting the R&R.  *See Thomas v.

Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


August 5, 2022                                    *s/ Elizabeth A. Preston Deavers*
                                                 ELIZABETH A. PRESTON DEAVERS
                                                 UNITED STATES MAGISTRATE JUDGE

18